# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Eljen Corporation** | : | |
| 90 Meadow Road, | : | |
| Windsor, CT 06095 | : | Case No._____ |
| | : | |
|     Plaintiff, | : | |
| | : | Judge: _____ |
|     -v- | : | |
| | : | |
| **Ohio Department of Health** | : | Magistrate Judge: _____ |
| c/o Bruce T. Vanderhoff, Director | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
|     and | : | |
| | : | |
| **Dr. Bruce Vanderhoof,** | : | |
| **In his personal and official capacities** | : | |
| Ohio Department of Health, Director | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
|     and | : | |
| | : | |
| **Audrey Blakeman,** | : | |
| **In her personal and official capacities** | : | |
| Ohio Department of Health, Director | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
|     and | : | |
| | : | |
| **Rebecca Fugitt,** | : | |
| **In her personal and official capacities** | : | |
| Ohio Department of Health, Director | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215, | : | |
| | : | |
|     Defendants. | : | |

**COMPLAINT**

Plaintiff Eljen Corporation ("Eljen"), for its Complaint against Defendant the Ohio Department of Health ("ODH"), avers and alleges as follows:

**INTRODUCTION**

Eljen is a veteran-led small business that has been in business since 1970. It manufactures onsite wastewater treatment technology and has been recognized as a global leader in providing innovative products and solutions for protecting the environment and public health. For decades, Eljen has manufactured and installed its products *all over the world* with little to no issues. And for over a decade, Eljen has operated its GSF System in Ohio with no reported failures or issues.

As a global leader in providing innovative products and solutions for protecting the environment and public health, Eljen conducted further testing and collected data on its GSF System using a reduced layer of subsurface sand filtration. This reduction would allow Eljen customers to realize savings without compromising effectiveness.

But Eljen's efforts were stymied by ODH and its representatives. While Eljen met all of ODH's standards, metrics, rules, and regulations, ODH and its representatives constantly moved the goal posts. In the process of trampling Eljen's rights, however, ODH violated its statutorily required timeline to process Eljen's application. But ODH's delay and gamesmanship nevertheless has injured Eljen. Eljen has, and continues to, suffer financial damages because of ODH's actions and omissions.

**PARTIES**

1. Plaintiff Eljen Corporation is a Connecticut Corporation, licensed to do business in Ohio, with its principal place of business in in Windsor, CT. Eljen is a veteran-led small

2

business that manufactures onsite wastewater treatment technology and has been recognized as a global leader in providing innovative products and solutions for protecting the environment and public health.

2. Defendant ODH is a cabinet-level state agency that, as part of its duties, regulates sewage treatment systems across the state. The Ohio Department of Health Sewage Treatment Systems program provides technical assistance and training to local health districts, industry and the public on all aspects of sewage treatment systems.

3. Bruce T. Vanderhoof, M.D., MBA, is the Director of ODH.

4. Audrey Blakeman is the current Program Manager for the Residential Water and Sewage Program (the "Program"), which oversaw Eljen's application.

5. Rebecca Fugitt was the Program Manager for the Residential Water and Sewage Program from 1996 until 2015, at which point she accepted the position of Assistant Chief for the Bureau of Environmental Health and Radiation Protection.

## JURISDICTION AND VENUE

6. Eljen restates the foregoing paragraphs as if fully rewritten herein.

7. This action arises under the laws of the United States, including 42 U.S.C. § 1983, and this Court possesses jurisdiction over this matter under 28 U.S.C. § 1331, as this case presents questions of federal constitutional law and 28 U.S.C. § 1343 involving deprivations of Eljen's civil rights under color of state law. Jurisdiction supporting Eljen's claims for attorneys' fees is conferred by 42 U.S.C. § 1988.

8. This Court has personal jurisdiction over ODH, and venue is proper in this District pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to this claim occurred in this District.

**FACTS COMMON TO ALL CLAIMS**

9. Eljen restates the foregoing paragraphs as if fully rewritten herein.

10. In 2013, Eljen's Geotextile Sand Filter Module ("GSF System") was approved for use in Ohio. **Exhibit 1.**

11. The GSF System is a wastewater treatment technology and system that combines treatment and dispersal technology using a sand layer beneath the system for a secondary layer of treatment and dispersal of treated effluent.

12. Eljen has sold, installed, and operated its GSF System in Ohio for over a decade with no reported failures or issues.

13. The original GSF system called for the installation of twelve inches of sand underneath the system, which is what ODH approved in 2013.

14. Further testing, studies, and use in other states demonstrated that the GSF System could exceed the ODH standards when configured with just six inches of sand rather than twelve.

15. Eljen tested its 6-inch GSF System at the Massachusetts Alternative Septic System Technology Center (MASSTC), which is the nation's premier third-party testing and research facility for innovative/alternative (I/A) onsite septic treatment technologies.

16. MASSTC certified Eljen's 6-inch GSF System as compliant with current ANSI/ National Sanitation Foundation ("NSF") Standard 40, which is the established standard for residential wastewater treatment systems.

17. The reduced sand required for the system would allow Eljen customers to realize savings without compromising effectiveness.

4

18. So on November 22, 2021, Eljen submitted an application to ODH ("Application")[1] to modify its existing GSF System approval to permit installation of the GSF System with six inches of subsystem sand (6-inch GSF System) rather than twelve inches.

19. But for years, ODH gave Eljen the runaround. ODH unnecessarily delayed processing Eljen's Application for various manufactured reasons.

20. First, in response to Eljen's Application, ODH incorrectly claimed that the Application was incomplete and refused to forward the Application for review and consideration. **Exhibit 2.**

21. As a purported basis for finding the Application incomplete, ODH challenged the testing protocol used by the accredited third-party testing facility claiming that Eljen needed to conduct "open bottom" testing rather than the controlled "closed bottom" enclosure testing performed at MASSTC.

22. Having dealt with ODH's inconsistent processes and demands previously, Eljen retained legal counsel and pushed back, demanding that ODH identify the law requiring such specific testing protocol. **Exhibit 3.**

23. ODH later conceded that no such testing protocol requirement existed and could not identify a single product that was required to conduct "open bottom" testing. ODH also conceded that the Application was complete. Accordingly, ODH forwarded the Application to the Technical Advisory Committee ("TAC")—which is the committee tasked with reviewing and making recommendations to the ODH Director for approval of products. **Exhibit 4.**

24. Eljen's Application was first considered at the April 12, 2022, TAC meeting. During that meeting, ODH representative Rebecca Fugitt began raising the same issue ODH

---

[1] Due to size, Eljen's Application is not attached to this Complaint.

previously raised in its January 3, 2022, letter about the "closed-bottom" testing protocol. **Exhibit 5 (TAC Meeting Minutes).**

25. Ms. Fugitt told the TAC about her participation on the NSF committee that sought to implement the testing protocol ODH was demanding. She conceded, however, that no such protocol was established because there was no consensus on the protocol, and that such testing was cost prohibitive to the industry participants.

26. Ms. Fugitt then told the TAC that her purported concerns "were widely discussed with the [Rules Advisory Committee ("RAC")]" when ODH was updating its onsite wastewater treatment rules in 2015.

27. But even after NSF, the RAC, the TAC, and ODH considered the purported need to establish testing protocol for systems like Eljen's, no rules or regulations were ever established. ODH conceded the same.

28. At the same April 12, 2022, TAC meeting, local attorney and TAC member, Chris Schraff, questioned Ms. Fugitt on the lack of prescribed testing protocol and noted that it is "incumbent on the TAC and ODH to prescribe a method."

29. Ms. Fugitt's only response was that she "anticipated that NSF would have been able to develop a national standard to review these types of products," but that had not happened, again conceding that the testing protocol ODH was demanding had been widely considered and ultimately rejected.

30. When Eljen finally had an opportunity to present to the TAC, Captain Jim King, Eljen's President, noted that Eljen's test results met all of ODH's standards, complied with ANSI/NSF protocol, and the GSF System was certified accordingly.

31. Also at the April 12, 2022, TAC meeting, Eljen's counsel put the TAC and ODH on notice that ODH had violated the statutory timeline to process Eljen's Application under R.C. 3718.04(C).

32. At the conclusion of the April 12, 2022, TAC meeting, ODH and the TAC discussed tabling consideration of the Application and asked Eljen to provide a "scalability" letter from MASSTC to confirm the 6-inch GSF System testing and certification could be applied to systems of various sizes.

33. Eljen noted that this information was already contained in its Application, noted its objection to the tabling, but eventually agreed to work with the TAC and ODH amicability to get its approval.

34. Eljen provided another scalability letter from MASSTC and returned to the next TAC meeting on May 10, 2022.

35. In advance of the May 10, 2022, meeting, Eljen also provided ODH staff with a comprehensive letter responding to each of the purported issues raised at the April 12, 2022, meeting. **Exhibit 6.**

36. Eljen requested that its May 4, 2022, letter be distributed to the TAC members in advance of the May 10, 2022, meeting. But ODH failed to fulfill this request.

37. After ODH and the TAC continued to raise issues for the first time, it was ultimately noted by the TAC "that the data provided with this application meets the standards for which it is seeking approval and that the issue of scalability raised in the previous meeting has been addressed." **Exhibit 7 (May 10, 2022, TAC meeting minutes).**

38. At the May 10, 2022, TAC meeting, the TAC recommended approval of the Application.

39. At no time during either the April 12 or May 10 TAC meetings was Eljen notified about any conditions that would be placed on its product approval.

40. At no time during either the April 12 or May 10 TAC meetings was Eljen given an opportunity to be heard on any conditions that would be placed on its product approval.

41. At no time did ODH or the TAC suggest or recommend approving Eljen's Application with specific conditions.

42. Over seven and a half months after Eljen submitted its Application, and with a recommendation of an unconditional approval from the TAC, the ODH Director inexplicably issued a *conditional* approval on July 8, 2022 ("Conditional Approval"). **Exhibit 8.**

43. The five pages of conditions imposed onerous and "cost-prohibitive" testing protocol and reporting requirements.

44. Moreover, ODH has not required the type of onerous testing it is unlawfully requiring of Eljen from other similarly situated manufacturers for similar products.

45. For example, Infiltrator Water Technologies manufactures a similar product known as the ATL System. ODH approved this product without conditions and without questioning its pre-application testing protocol.

46. Anua is another manufacturer that had a similar product—the AeroCell—approved by ODH without any onerous conditions and without questioning its pre-application testing protocol.

47. Other manufacturers, such as Jet and Norweco, received the same preferential treatment from ODH wherein their products were approved without questioning or challenging the testing protocol performed at widely accepted testing facilities and without onerous conditions.

48. After receiving the Conditional Approval, Eljen exercised and exhausted its administrative remedies.

49. Eljen sought an administrative hearing, arguing that because the Conditional Approval was untimely and that therefore Eljen's Application was already approved.

50. Eljen also raised other legal issues including claims that ODH and its representatives violated Eljen's Due Process rights, violated the Equal Protection Clause, and that ODH's position that the Director has unfettered authority to impose conditions is unconstitutional.

51. Ultimately, the ODH Hearing Examiner recommended affirmance of the Director's Conditional Journal Entry, and Eljen objected to the Report and Recommendation.

52. Neither ODH nor the Hearing Examiner has jurisdiction to rule on the constitutional challenges raised in the administrative hearing.

53. The Director then rubberstamped the Hearing Examiner's Report and Recommendation.

54. Eljen then appealed the administrative decision to the Franklin County Court of Common Pleas and is awaiting a decision.

## COUNT ONE: Violation of Equal Protection
## Under 42 U.S.C. Section 1983 and the Ohio Constitution

55. Eljen restates the foregoing paragraphs as if fully rewritten herein.

56. Defendants subjected Eljen to unequal treatment of the law under color of law in violation of the Equal Protection Clause of the Fourth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.

57. Defendants have not challenged or questioned other similarly situated manufacturers' testing protocol or applications.

58. Defendants have not imposed onerous conditions on all other similarly situated manufacturers and products.

59. With respect to Eljen's Application, Defendants acted with animus and ill will towards Eljen and its product, and Defendants have no rational basis for the discriminatory treatment of Eljen.

60. As a result, Eljen has suffered and will continue to suffer injury and damages from Defendants' unequal treatment of law.

### COUNT TWO: Violation of Procedural Due Process
### Under 42 U.S.C. Section 1983 and the Ohio Constitution

61. Eljen restates the foregoing paragraphs as if fully rewritten herein.

62. Defendants have deprived Eljen of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I and 16 of the Ohio Constitution.

63. Eljen's property and liberty interests—for example, the right to pursue its business—are protected by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

64. Eljen possesses legitimate claims of entitlement and justifiable expectations in its property and liberty interests, including having its product approved because it met all of ODH's rules and regulations, and having its product approved without conditions because of ODH's failure to comply with the statutory timelines.

65. Defendants deprived Eljen of its vested rights without due process of law.

66. For example, Eljen's Application and the data it provided "meets the standards for which it is seeking approval," as conceded by the TAC. Accordingly, Defendants had no discretion or right to deny or conditionally approve Eljen's Application.

67. Additionally, Defendants never afforded Eljen notice of potential conditions or an opportunity to be heard on the imposition of those onerous conditions.

68. And under R.C. 3718.04(B), once Defendants violated the statutory timeline, Eljen was entitled to, and justifiably expected, unconditional approval of its Application.

69. Eljen possesses a liberty interest to engage in "whatever legal business [it] elects to pursue," and has a right to pursue that business free from arbitrary and capricious conditions and restrictions.

70. Defendants' actions and inaction have prevented Eljen from engaging in its lawful profession in Ohio.

71. Defendants deprived Eljen of its property and liberty interests by denying Eljen the opportunity to have its Application reviewed and evaluated consistent with established rules, regulations, and laws.

72. Eljen never had a meaningful opportunity to be heard in violation of its rights of procedural due process.

73. As a result, Eljen has suffered and will continue to suffer injury and damages from Defendants' deprivation of its vested rights under the United States Constitution and Ohio Constitution.

**COUNT THREE: Violation of Substantive Due Process
Under 42 U.S.C. Section 1983 and the Ohio Constitution**

74. Eljen restates the foregoing paragraphs as if fully rewritten herein.

75. Defendants have deprived Eljen of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I and 16 of the Ohio Constitution.

76. Eljen possesses legitimate claims of entitlement and justifiable expectations in its property and liberty interests, including having its product approved because it met all of ODH's rules and regulations, and having its product approved without conditions because of ODH's failure to comply with the statutory timelines.

77. Defendants arbitrarily and capriciously deprived Eljen of its vested rights.

78. For example, Eljen's Application and the data it provided "meets the standards for which it is seeking approval," as conceded by the TAC. Accordingly, Defendants had no discretion or right to deny or conditionally approve Eljen's Application.

79. Additionally, Defendants never afforded Eljen notice of potential conditions or an opportunity to be heard on the imposition of those onerous conditions.

80. And under R.C. 3718.04(B), once Defendants violated the statutory timeline, Eljen was entitled to, and justifiably expected, unconditional approval of its Application.

81. Eljen possesses a liberty interest to engage in "whatever legal business [it] elects to pursue," and has a right to pursue that business free from arbitrary and capricious conditions and restrictions.

82. Defendants have arbitrarily interfered with and prevented Eljen from engaging in its lawful profession in Ohio.

83. Defendants' actions are arbitrary, capricious, and unreasonable.

84. As a result of Defendants' arbitrary and capricious actions, Eljen has suffered and will continue to suffer injury and damages from Defendants' deprivation of its vested rights under the United States Constitution and Ohio Constitution.

## COUNT FOUR: Declaratory Judgment

85. Eljen restates the foregoing paragraphs as if fully rewritten herein.

86. Eljen had a statutory right and entitlement to unconditional approval of its Application because of Defendants' untimely processing and violation of R.C. 3718.04(B).

87. The Director's purported statutory right to impose any conditions he chooses without any guidelines is unconstitutional, unreasonable, and not substantially related to the public health, safety, or welfare.

88. Eljen met all of the standards, rules, regulations, and laws to be entitled to approval of its Application.

89. Accordingly, Eljen is entitled to a declaration that: (1) its Application is unconditionally approved; (2) that Defendants violated the statutory timeline in R.C. 3718.04; and (3) that the Director does not have the right to unilaterally impose conditions on Eljen's application without any guidelines.

## PRAYER FOR RELIEF

**WHEREFORE**, Eljen demands judgment against Defendants as follows:

90. Compensatory and other monetary damages in excess of $75,000 and an amount necessary to be determined at trial;

91. Pre- and post-judgment interest;

92. Attorney fees and costs pursuant to 42 U.S.C. § 1988 and/or other applicable statute or common law;

93. Declaratory judgement pursuant to 28 U.S.C. § 2201, declaring that Defendants' conduct violated due process and equal protection, and that Eljen's Application is unconditionally approved; that Defendants violated the statutory timeline in R.C. 3718.04; and that the Director does not have the right to unilaterally impose conditions on Eljen's application without any guidelines.

94. Any other declarative, injunctive or other equitable relief this Court deems just and appropriate.

Respectfully submitted,

*/s/ Yazan S. Ashrawi*
Yazan S. Ashrawi (0089565), *Trial Attorney*
FROST BROWN TODD LLP
10 W. Broad Street, Suite 2300
Columbus, Ohio 43215
Tel: (614) 464-1211
Fax: (614) 464-1737
yashrawi@fbtlaw.com

*Attorneys for Eljen Corporation*

## **JURY DEMAND**

Eljen Corporation requests a trial by jury on all issues so triable.

                                                Respectfully submitted,

                                                */s/ Yazan S. Ashrawi*
                                                Yazan S. Ashrawi (0089565)
                                                FROST BROWN TODD LLP
                                                10 W. Broad Street, Suite 2300
                                                Columbus, Ohio 43215
                                                Tel: (614) 464-1211
                                                Fax: (614) 464-1737
                                                yashrawi@fbtlaw.com

                                                *Attorneys for Eljen Corporation*

## INSTRUCTIONS TO CLERK

Please issue a summons together with a copy of the foregoing Complaint to be served upon the Defendants at the addresses listed in the caption by certified U.S. Mail, return receipt requested and returnable according to law. If certified service cannot be obtained, the summons and complaint should be reissued via ordinary mail service.

*/s/ Yazan S. Ashrawi*
Yazan S. Ashrawi (0089565)

0149660.0752807  4867-8700-9230v2