## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ELJEN CORPORATION,**

        **Plaintiff,**        :

     **v.**

                            **Case No. 2:24-cv-3672**
                            **Chief Judge Sarah D. Morrison**
                            **Magistrate Judge Elizabeth P.**

**OHIO DEPT. OF HEALTH,** *et*
*al.*,                                 **Deavers**

                       :

        **Defendants.**

## OPINION AND ORDER

There are two pending motions in this case. The first-filed motion is Eljen Corporation's Motion for Preliminary Injunction. (ECF No. 19.) The second motion is actually two motions in one[1] – Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings. (ECF No. 26.) Defendants' Motion is dispositive on the bases for Eljen's Motion, so the Court will address Defendants' Motion first.

---

[1]Defendants' briefing on its Motion runs for 97 pages and Eljen's response is 47 pages – this is more than excessive. Defendants claim in their reply memorandum that the length of their Motion "merely reflects the numerous deficiencies contained within the SAC." (ECF No. 34, PAGEID # 1984.) It does not – it reflects a lack of editing. Counsel for both sides are admonished to follow the advice of Beatrix Potter: "the shorter and the plainer the better." Christopher Andreae, Storyteller Behind Peter Rabbit's Tales, Los Angeles Times (Dec. 25, 1990, 12:00 AM), https://www.latimes.com/archives/la-xpm-1990-12-25-vw-7166-story.html.  Counsel are also directed to review the Undersigned's Standing Orders, which were updated after the parties' briefs were filed.

## I. Factual Background

This factual background comes from the Second Amended Complaint ("SAC"). When considering the Defendants' Motion, the Court construes the factual allegations in the light motion favorable to Eljen. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Eljen, a manufacturer of wastewater treatment technology, filed this action against the Ohio Department of Health ("ODH"), and Bruce Vanderhoff, Audrey Blakeman, and Rebecca Fugitt, in their personal and official capacities, for alleged violations of the U.S. and Ohio Constitutions. (SAC, ECF No. 17.) ODH is the state agency that regulates sewage treatment systems in Ohio; Dr. Vanderhoff is the ODH Director; Ms. Blakeman is the Program Manager for the Residential Water and Sewage Program (the "Program"); and Ms. Fugitt was the Program Manager from 1996 to 2015. (*Id.*, ¶¶ 2–5.)

Eljen manufactures combined treatment and dispersal sewage systems ("CTD systems"). (*Id.*, PAGEID # 128.) Its Geotextile Sand Filter Module ("GSF System") was approved by ODH for use in Ohio in 2013 and the system was then sold, installed, and used in Ohio for years with no reported failures or issues. (*Id.*, ¶¶ 10, 12.)

Eljen's claims relate to three actions by Defendants: (1) the Conditional Approval of a modification to the GSF System, (2) the September 12, 2024 Journal Entry enacting new regulations, and (3) the October 15, 2024 Notice of Removal letter.

### 1. Conditional Approval of Eljen's Modification of the GSF System

In November 2021, Eljen sought ODH's approval of a modification to the GSF System – the modification featured a 6-inch (rather than a 12-inch) subsystem sand installation (the "Application"). (*Id.*, ¶¶ 13–18.)

As part of its review of the Application, ODH forwarded it to the Technical Advisory Committee ("TAC"), which committee was charged with reviewing and making recommendations to the ODH Director for approval of products. (*Id.*, ¶ 23.) Eljen asserts that the Defendants "gave [it] the runaround" regarding its modification of the GSF System by, among other things, unnecessarily delaying its Application and raising issues that were not supported by law. (*Id.*, ¶¶ 19, 44.) In April 2022, Eljen notified Defendants that they had violated the statutory timeline set forth in Ohio Rev. Code 3718.04 to process its Application. (*Id.*, ¶ 31.)

It was not until May 10, 2022, that TAC recommended approval of the Application. (*Id.*, ¶ 45.) But, in response to TAC's recommendation, on July 8, 2022, ODH and Dr. Vanderhoff only conditionally approved the modification to the GSF System. (*Id.*, ¶ 50.) Eljen alleges that the Conditional Approval was initiated, drafted, and recommended by Ms. Fugitt and Ms. Blakeman, and it claims that the conditions imposed by ODH were onerous, cost-prohibitive, and unnecessary. (*Id.*, ¶¶ 50–57.)

When Eljen pursued its administrative remedies to object to the Conditional Approval of its Application, an ODH Hearing Examiner affirmed the Conditional Approval. (*Id.*, ¶ 62.) Eljen then appealed to the Franklin County, Ohio Court of

3

Common Pleas. (*Id.*, ¶ 64.) At the time the SAC was filed, Eljen was awaiting a decision on its appeal. (*Id.*)

### 2. September 12, 2024 Journal Entry enacting new regulations

Simultaneous to the processing of Eljen's Application, ODH, Dr. Vanderhoff, and Ms. Blakeman proposed new regulations on CTD systems. (*Id.*, ¶ 65.) A draft of the regulations was sent to Eljen, and the company responded by providing input on the proposal. (*Id.*, ¶¶ 66–67.) But then, without further notice to Eljen, ODH and Dr. Vanderhoff enacted new, substantive regulations on CTD systems on September 12, 2024, with the issuance of a Journal Entry. (*Id.*, ¶ 68.) These new regulations required manufacturers of existing and approved CTD systems to submit an application for product renewal by December 12, 2024. (*Id.*, ¶ 69.) This meant that Eljen would have to file a renewal application for its previously approved product by December 12, 2024. (*Id.*)

### 3. October 15, 2024 Notice of Removal letter

On October 15, 2024, ODH, Dr. Vanderhoff, and Ms. Blakeman sent a letter to Eljen – the letter was captioned "Notice of Products Subject to Removal from List of Approved Pretreatment Components pursuant to OAC 3701-29-13(B) Due to Expiration of Director's Approval." (*Id.*, ¶ 82.) The Notice alleged that Eljen had failed to renew the approval of its GSF System by December 31, 2023, as required by OAC 3701-29-13(D) and it went on to explain that Eljen could cure this failure by complying with the Journal Entry and submitting a renewal application by December 12, 2024. (*Id.*, ¶ 83.)

## II. Procedural Background

Eljen filed this action on July 8, 2024, and it subsequently filed two amendments to the complaint. It filed the SAC after ODH issued the Journal Entry, arguing that the new regulations unfairly targeted Eljen. (*Id.*, ¶ 77.) The SAC sets forth the following claims:

> Count 1 – Violation of Equal Protection as to the Conditional Approval
> Count 2 – Violation of Equal Protection as to the Journal Entry
> Count 3 – Violation of Equal Protection as to the Notice of Removal
> Count 4 – Violation of Procedural Due Process as to the Conditional Approval
> Count 5 – Violation of Procedural Due Process as to the Journal Entry
> Count 6 – Violation of Procedural Due Process as to the Notice of Removal
> Count 7 – Violation of Substantive Due Process as to the Conditional Approval
> Count 8 – First Amendment Retaliation as to the Notice of Removal
> Count 9 – For Declaratory Judgment as to the Conditional Approval
> Count 10 – For Declaratory Judgment as to the Journal Entry
> Count 11 – For Declaratory Judgment as to the Notice of Removal

Along with its SAC, Eljen filed a motion seeking a temporary restraining order and preliminary injunction. At an Informal Hearing held pursuant to Loc. R. 65.1 on Eljen's motion for injunctive relief, the Court denied Eljen's motion to the extent that it sought a temporary restraining order but deferred ruling on Eljen's request for a preliminary injunction. (ECF No. 21.) Defendants then filed their motion seeking dismissal or judgment on all of Eljen's claims. (ECF No. 26.)

## III. Defendants' Combined Motion to Dismiss/Motion for Judgment on the Pleadings

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.

2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

All well-pled factual allegations in the Complaint are accepted as true for purposes of the Motion. *See Id*.

## A.    Ripeness

Defendants first argue that Eljen lacks standing to assert its claims regarding the Journal Entry and the Notice of Removal because the claims are not ripe.[2]

---

[2]Standing and constitutional ripeness are both limits on a federal court's ability to hear a case, but they are distinct legal concepts. *See Warhak v. United States*, 532 F.3d 521, 525. Nevertheless, there is some overlap between ripeness and standing. *Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("The standing question thus bears close affinity to questions of ripeness—

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993). "Ripeness is a question of timing ... [which] dictates that courts should decide only existing, substantial controversies, not hypothetical questions or possibilities.... Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir. 1989) (citations omitted). Unlike standing, in determining ripeness, the Court's focus is on the development of the facts and not on the parties themselves. *Hallandale Prof. Fire Fighters Loc. 2238 v. City of Hallandale*, 922 F.2d 756, 760 n. 3 (11th Cir.1991). Requiring that plaintiffs bring only ripe claims helps courts "avoid[ ] ... premature adjudication." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967); *see also Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (explaining that ripeness asks whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

Ripeness is present when "an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention" or "when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010). A "future injury" will be deemed ripe if either "the injury is certainly impending" or "there is substantial risk that the harm

---

whether the harm asserted has matured sufficiently to warrant judicial intervention.").

7

will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014); see also *Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 845 (5th Cir. 1988) ("too many ifs" that render an injury a "mere potential[ity]," not just one or two that may render such a result into a substantial possibility or even a probability, will make a case unripe).

To determine whether a claim is ripe for judicial review, the Court must consider "the fitness of the issues for judicial decision" and "the hardship of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003); *see also Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (to determine whether a claim is ripe, a court must consider (1) the likelihood that the injury alleged by the plaintiff will ever occur; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) the hardship to the parties from refusing consideration). For pre-enforcement challenges, a case is ordinarily ripe for review "only if the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). The ripeness doctrine acknowledges the problem inherent in adjudicating a dispute "anchored in future events that may not occur as anticipated, or at all." *Id.*

If the Court does not have before it a ripe issue, it must dismiss the claim because it lacks subject matter jurisdiction. *Bigelow v. Michigan Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir.1992).

1.    **The Journal Entry**

The Journal Entry states, in pertinent part:

> CTD systems approved for use prior to the date of this Journal Entry
> are required to submit a complete application for product renewal in
> accordance with OAC 3701-29-13(D) within three months of the date of
> this Journal Entry. Failure to submit a complete application will result
> in revocation of product approval(s) in accordance with ORC
> 3718.04(G) and OAC 3701-29-13(B)(4). Prior approval(s) shall remain
> in effect and not subject to this Special Device Approval until such
> time as a renewal application is approved or a prior approval is
> revoked by the Director of Health.

(SAC, Ex. 9.)

Eljen argues that, in the Journal Entry (and in the Notice of Removal),
Defendants showed their true intentions to remove Eljen's GSF System from its list
of approved products. (Resp., ECF No. 33, PAGEID # 1934.) But nothing in the
language of the Journal Entry telegraphs a motivation to remove the GSF System
or to otherwise harm Eljen. Rather, in significant part, Eljen is the master of its
fate – if it fails to submit a completed application by the deadline, its product
approval will be revoked; but if it submits a timely, completed application, its prior
approval remains in place while ODH reviews the new application.

If Eljen timely submits its application, there is some likelihood that the
injury alleged by Eljen will never occur. ODH could approve Eljen's new
application.[3] There is minimal hardship on Eljen at this time because ODH has

---

[3]According to Eljen, the Eljen GSF System is a unique technology that
combines treatment and dispersal technology using a sand layer beneath the
system for a secondary layer of treatment and dispersal of treated effluent. The
System has been subject to extensive testing and provides savings to its customers.
(SAC, PAGEID # 127.) It has been certified by the Massachusetts Alternative Septic
System Technology Center (MASSTC) and is compliant with current ANSI/

allowed the GSF System to remain on the approved list while it reviews Eljen's application. Even if ODH decides to remove the GSF System (whether Eljen does not submit an application by the deadline or if the application is denied), any such removal is subject to Ohio's Chapter 119 process.[4] *See* Ohio Rev. Code 3718.04(G); Ohio Admin. Code 3701-29-13(B)(4).

At this time, the factual record is not sufficiently developed to allow for adjudication – not only do we not know that ODH will deny Eljen's renewal application, we also do not know the reason(s) why it would be denied. Thus, the Court has significant concerns that Eljen is inviting it to entangle itself with ODH's review of Eljen's application.

For these reasons, Eljen's claims are different in kind from the pre-enforcement review cases that it cites to argue that where there is threatened action by the government, courts do not require a plaintiff to expose himself to liability. Eljen has not been threatened with criminal prosecution and there is no indication Eljen has been prevented from engaging in specific constitutionally protected conduct.

---

National Sanitation Foundation ("NSF") Standard 40 (the standard for residential wastewater treatment systems in Ohio). (¶¶ 15, 16.) Thus, it is not unreasonable to believe that Eljen's application could be approved.

[4] Despite its arguments in response to the motion to dismiss about the adequacy of Ohio's Chapter 119 process, Eljen did not plead that it does not have adequate state remedies at its disposal. In fact, the Sixth Circuit has concluded that Ohio Rev. Code Chapter 119 satisfies procedural due process. *See Comsia v. Mangnone*, 1987 WL 35877 (6th Cir. 1987) ("The State of Ohio provides an adequate post-deprivation proceeding for the plaintiff to pursue which satisfies the requirements of procedural due process.").

Eljen's claims arising out of the Journal Entry are not ripe, so Counts 2, 5, and 10 are **DISMISSED**.

### 2.    The Notice of Removal

Although the Notice of Removal states in its subject line that it is a "Notice of Products Subject to Removal from List of Approved Pretreatment Components pursuant to OAC 3701-29-13(B) Due to Expiration of Director's Approval," the letter then provides:

> … because the approvals for Eljen Corporation's STS products identified in this letter have expired and Eljen Corporation failed to seek renewal of approval, the Director is required to remove them from the list of approved pretreatment components.
>
> Even though the approvals for its products expired more than nine months ago, the Department will allow Eljen Corporation's pretreatment components identified in this letter to remain on its list of approved pretreatment components if Eljen Corporation, in accordance with the Journal Entry authorizing the Combined Treatment and Dispersal Special Device Approval, submits a complete renewal application seeking approval of all such STS products no later than Thursday, December 12, 2024.
>
> If Eljen Corporation fails to submit a complete renewal application on or before Thursday, December 12, 2024, pursuant to OAC 3701-29-13(B)(3), the Department will "remove the pretreatment component … from the list of approved pretreatment components in accordance with Chapter 119. of the Revised Code."

(SAC, Ex. 10.)

By its plain language and despite the reference to "removal" of the GSF System from the list of approved pretreatment components, the Notice of Removal cannot be read as a current or imminent threat that Defendants will remove it from ODH's list of approved products. Even if the Notice could be read as such a threat,

11

any such threat is certainly not imminent – ODH told Eljen that it would not remove the GSF System from its approved list if Eljen submitted a renewal application by the deadline. There is nothing in the Notice telegraphing a pre-ordained result. And, like with the Journal Entry, even if Eljen failed to submit a complete application by the deadline, its product would not be automatically removed from the approved list; ODH would begin a Chapter 119 process to remove Eljen's product.

Thus, the threat that its product might be removed from ODH's approved list is contingent upon future events that may not occur as anticipated, or indeed may not occur at all. And, for the same reasons that Eljen's challenge to the Journal Entry is not ripe, the factual record related to the Notice of Removal is not sufficiently developed to allow for adjudication. The GSF System remains on the approved list while ODH reviews Eljen's renewal application.

The claims related to the Notice of Removal are not ripe. Counts 3, 6, 8, and 11 are **DISMISSED**.

### B.     Eleventh Amendment Immunity

Defendants next argue that they are immune from Eljen's remaining claims by virtue of the Eleventh Amendment, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. The Eleventh Amendment bars an action against a state in federal court unless Congress has abrogated its sovereign immunity, or the state has expressly waived the immunity. *Virginia Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011).

The Eleventh Amendment applies not only to suits brought against a state by a citizen of "another State" but also to suits brought by citizens against the state in which they reside. *See Kalyango v. Ohio Univ.*, No. 2:22-CV-2028, 2023 WL 2499867, at *14 (S.D. Ohio Mar. 14, 2023) (Marbley, J.) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The same immunity applies to an instrumentality of the state, including a state official sued in his or her official capacity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity ... is no different from a suit against the State itself.") (citations omitted).

Sovereign immunity does not apply in three situations—1) when the state has consented to being sued, 2) when the *Ex Parte Young* exception applies, and 3) when Congress has abrogated a state's immunity. *Id.* Eljen argues in response to Defendants' Motion that the *Ex Parte Young* exception applies here because it is seeking injunctive relief from Defendants Vanderhoff and Blakeman. [5] (Resp.,

---

[5]Ms. Fugitt retired from her position with ODH in October 2022. In its Response to the Motion to Dismiss, Eljen implicitly dismisses its official capacity claim against Ms. Fugitt. (Resp., PAGEID # 1928–29, 1940, fn. 4.) To resolve any ambiguity, Eljen's official capacity claims against Ms. Fugitt are hereby **DISMISSED**.

PAGEID # 1939.) The *Ex Parte Young* exception allows a court to "issue prospective injunctive and declaratory relief compelling a state official to comply with federal law...." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). It applies where the plaintiff alleges "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

*Ex Parte Young* saves Eljen's claims based on the United States Constitution seeking injunctive relief related to the Conditional Approval against Dr. Vanderhoff and Ms. Blakeman in their official capacities. To the extent that Eljen's official capacity claims seek monetary damages[6] or retroactive injunctive or declaratory relief, those claims are **DISMISSED**.

The Eleventh Amendment also bars Eljen's claims to the extent that they are based on the Ohio Constitution and/or the Ohio Revised Code. When a State or state official is sued in federal court in a lawsuit filed under state law, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought. *See Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). Eljen's Counts 1, 4, and 7 allege, in part, violations of the Ohio Constitution – to that extent, those claims are **DISMISSED**.

---

[6]To the extent it seeks monetary damages, it can seek that relief only against the individual Defendants in their individual capacities. The Eleventh Amendment does not bar suits against a government official in his or her individual capacity for monetary damages, but an award of damages can be executed only against the official's personal assets. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

And Eljen's remaining Declaratory Judgment claim in Count 9 is premised on its allegation that Defendants violated Ohio Rev. Code 3718.04(B) – that claim is **DISMISSED**.

### C.    Eljen's § 1983 Claims Against ODH

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (emphasis added) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011)).

A defendant must be a "person" to be held liable for any alleged deprivation under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); see also *Nuovo v. The Ohio State Univ.*, 726 F. Supp. 2d 829, 850 (S.D. Ohio 2010) (Frost, J.) (citation omitted). While state officials may be held liable under § 1983 when sued for injunctive relief, the State may not. *See Will*, 491 U.S. at 71 n. 10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985).

ODH is an agency of the State of Ohio, not a "person." The § 1983 claims against it are **DISMISSED**.

### D.    Burford Abstention

Defendants argue that this Court should abstain from "this matter" under *Burford*, arguing that dismissal under *Burford* is appropriate. (Mot., PAGEID #

15

1781–85.) After the Court's rulings above, only Counts 1, 4, and 7 remain to the extent they are brought under the U.S. Constitution and are brought against the individual defendants in their individual capacities and against Dr. Vanderhoff and Ms. Blakeman in their official capacities for prospective injunctive relief.

*Burford* abstention applies when a case presents an unanswered question of state law "bearing on policy problems of substantial public import whose importance transcends" the case at hand and when conflicting state and federal rulings on the question "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 361(1989). When *Burford* applies, a district court should stay its hand until the state courts have had an opportunity to weigh in on the matter. *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010). *Burford* tells federal courts when to exercise discretion (by considering whether a federal ruling might wreak havoc on a sensitive yet indeterminate area of state policy) and how to exercise that discretion (by avoiding immediate resolution of the state law issue). *Id.*

The parties dispute whether *Burford* applies to Eljen's remaining claims. But the Court need not resolve this dispute because, even when *Burford* does not apply, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "The district court's broad discretion includes the power to stay a matter

16

pending resolution of independent proceedings which bear upon the case at hand."
*Unroe v. Vilsack*, No. 2:11–CV–592, 2012 WL 3527219, at *1 (S.D. Ohio Aug. 14, 2012) (Sargus, J.) (internal quotations and citations omitted). In deciding whether to stay a case, "district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth- Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (Beckwith, J.) (citation omitted).

Upon consideration of the *Ferrell* factors, the Court will stay this case. ODH's Conditional Approval is on appeal and is pending before the Franklin County Court of Common Pleas. According to the on-line docket for *Eljen Corp. v. Ohio Dep't of Health*, Case No. 24-CV-1117, that appeal is fully briefed, and the parties are awaiting a decision. A decision on Eljen's appeal may well moot its claims or narrow the issues in this case, promoting judicial economy. In the meantime, Eljen's GSF System continues to be on ODH's approved list so the hardship to Eljen or the public is minimal.

## IV.    Eljen's Motion for a Preliminary Injunction

Eljen's Motion for Preliminary Injunction asks the Court to enjoin enforcement of the Journal Entry and the Notice of Removal against Eljen. (ECF Nos. 19, 25.) In light of the Court's conclusion that Eljen's claims related to the Journal Entry and the Notice of Removal are not ripe, Eljen cannot demonstrate that it has a likelihood of success on the merits. Accordingly, its Motion for a Preliminary Injunction is **DENIED**.

V.    CONCLUSION

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings (ECF No. 26) is **GRANTED** in part and **DENIED** in part. Counts 2, 3, 5, 6, and 8–10 of the SAC are hereby **DISMISSED**. The balance of Defendants' Motion is **DENIED** without prejudice. The case is hereby **STAYED** as to Counts 1, 4, and 7.

Eljen's Motion for Preliminary Injunction (ECF No. 19) is **DENIED**.

The parties are **ORDERED** to file a status report within six months of the entry of this Opinion and Order or within two weeks of a decision in *Eljen Corp. v. Ohio Dep't of Health*, Franklin County Court of Common Pleas Case Number 24-CV-1117, whichever is earlier.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**